*Court will hold a pre-motion conference on the parties' proposed motions to dismiss on December 3, 2010, at 10:45 a.m.*

# DORSEY™

**BRUCE R. EWING**
**PARTNER**
**(212) 415-9206**
**ewing.bruce@dorsey.com**

SO ORDERED:

~~William H. Pauley~~ (signature)

November 17, 2010

WILLIAM H. PAULEY III U.S.D.J.

11/22/2010

**BY HAND**
The Honorable William H. Pauley III
U.S. District Court for the
Southern District of New York
500 Pearl Street, Room 2210
New York, New York 10007

RECEIVED
NOV 17 2010
CHAMBERS OF
WILLIAM H. PAULEY
U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/22/2010

Re: *Hard Rock Cafe International (USA), Inc. v.*
*Hard Rock Hotel Holdings, LLC et al.*, 10 CV 7244 (WHP)

Dear Judge Pauley:

We are counsel to plaintiff Hard Rock Cafe International (USA), Inc. ("HRCI"). We write both in response to the November 12th letter from counsel for some of the defendants, in which they advise the Court of their intention to file a motion to dismiss some of HRCI's claims, and pursuant to paragraph 3A of the Court's Individual Practices to seek leave to file HRCI's own motion to dismiss counterclaims filed by some of those same defendants.

## Introduction

HRCI is the worldwide owner of the famous trademarks HARD ROCK CAFE, HARD ROCK HOTEL, HARD ROCK CASINO, HRH and variations thereof (the "HARD ROCK Marks"). Defendants Hard Rock Hotel Holdings, LLC, Hard Rock Hotel, Inc. and HRHH IP, LLC (the "Hard Rock Defendants") are HRCI's licensees, or their affiliates, with the limited right to use only two of the HARD ROCK Marks, namely HARD ROCK HOTEL and HARD ROCK CASINO. The Hard Rock Defendants are controlled by defendants Morgans Hotel Group Co., Morgans Hotel Group Mgt., LLC and DLJMB HRH VoteCo LLC.[1]

As much as Defendants would have the Court believe that they have the unfettered right to use HRCI's HARD ROCK Marks in any manner they please, all of those Marks belong to HRCI, and Defendants are merely HRCI's licensees or parties that control and direct the operations of HRCI's licensees. Defendants' persistent refusal to respect HRCI's trademark rights and to acknowledge that all of their uses of the HARD ROCK Marks inure to HRCI's benefit is the root cause of the disputes that have given rise to this action. Whether this attitude is the product of a failure to recognize the limited scope of their license to use only two of the HARD ROCK Marks in a restricted territory or the poor financial condition of the Las Vegas property that they operate or control is unclear, but what HRCI's Complaint shows is that

---

[1] The remaining defendants – Turner Broadcasting System, Inc., Brad Lachman Productions, Inc. and Genco Entertainment, Inc. – have not sought leave to file a motion to dismiss, nor have they asserted any counterclaims against HRCI. The references to "Defendants" in this letter therefore exclude these three entities.



Honorable William H. Pauley, III
November 17, 2010                                                                                    Page 2

Defendants have persistently misused and abused the HARD ROCK Marks, seriously damaging their goodwill in a manner that only the termination of the license can remedy.

Defendants' November 12th letter is one more example of how flagrantly they have breached their duties as licensees. Defendants characterize the television program filmed at their Las Vegas property, which uses one of the licensed HARD ROCK Marks in its title (without authorization from HRCI) as nothing more than an innocuous reality television program that depicts "a certain amount of colorful behavior by hotel staff and guests." November 12th letter at 2. Yet, as HRCI's Complaint shows, viewers of this program consider it to be offensive and disgusting, and they are taking their anger out on HRCI. Complaint, ¶¶ 41-51. Defendants characterize this case as a subterfuge brought solely for economic reasons, but HRCI's claims are necessary to protect its trademarks from being further damaged by rogue licensees whose own actions compel the termination of the limited license they possess.

### Defendants' Planned Motion

Defendants' November 12th letter outlines three arguments that some of them plan to advance in seeking the dismissal of some of HRCI's claims. All three arguments are entirely without merit. For example, Defendants argue on pages 2-3 of their letter that the provision of the operative license agreement requiring that two of the Hard Rock Defendants must use their "best efforts" to protect the licensed HARD ROCK Marks and the goodwill associated therewith is void for vagueness. However, New York law recognizes that the enforceability of "best efforts" clauses depends on the circumstances of a particular case, is usually an issue for trial, and should not be resolved on a motion to dismiss. *See Wolf Concept S.A.R.L. v. Eber Bros. Wine and Liquor Corp.*, --- F. Supp. 2d ---, 2010 WL 3258389, at *8 (W.D.N.Y. Aug. 17, 2010).

Notwithstanding the deficiencies in this particular argument and the others outlined in Defendants' November 12th letter, HRCI recognizes that the Court will likely allow the planned motion to be made and has no objection, so long as briefing can be completed in a timely way.

### HRCI's Planned Motion to Dismiss Defendants' Counterclaims

As part of a highly unconvincing effort to cast themselves in the role of aggrieved parties, the Hard Rock Defendants have asserted three counterclaims against HRCI, for breach of contract, breach of the implied covenant of good faith and fair dealing, and tortious interference with business relations. None of these counterclaims is properly stated, and therefore HRCI respectfully seeks leave to file its own motion to dismiss pursuant to Rule 12(b)(6).

With respect to the counterclaim for breach of contract, all of the alleged breaches with which HRCI is charged concern conduct that is either expressly permitted or not prohibited by the license. For example, that agreement confirms HRCI's ability to use or sublicense its HARD ROCK CAFE trademark anywhere in the world, even in the western U.S. Complaint, Exh. 3, ¶¶ 1(a), 2(a), 3(a). Similarly, the agreement imposes no restrictions whatsoever on HRCI's ability to register domain names in its own name that contain the trademarks it owns. *Id.*, ¶ 8(b). The unambiguous terms of the license therefore bar the Hard Rock Defendants' counterclaim for breach of contract. Further, nowhere do the Hard Rock Defendants plead any facts from which a trier of fact could conclude that HRCI's alleged breaches caused them to suffer damage.



Apparently recognizing that the license agreement does not support their breach of contract counterclaim, the Hard Rock Defendants contend that HRCI has violated "the spirit" of that agreement and assert a counterclaim for breach of the implied covenant of good faith and fair dealing. Counterclaims, ¶ 17. This counterclaim is an impermissible attempt to rewrite the license agreement to add provisions for which the parties did not bargain, of the sort that New York courts have long rejected. *See Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*, 723 F. Supp. 976, 991 (S.D.N.Y. 1999).

The Hard Rock Defendants' last counterclaim for tortious interference fares no better. That counterclaim is a vague collection of allegations pleaded on information and belief to the effect that HRCI has had discussions with unidentified third parties at unspecified times that have caused some sort of damage to the Hard Rock Defendants in ways that are not particularized. Counterclaims, ¶¶ 15-18. That counterclaim is also premised on statements contained in a news article made by an alleged HRCI executive that supposedly misstate the terms of the HRCI license. *Id.*, ¶¶ 22-25. Absent the identification of specific business relationships that were subject to the alleged interference, allegations that such relationships would have been consummated but for HRCI's interference, and facts from which a trier of fact could conclude that HRCI's actions caused damage to the Hard Rock Defendants, this third counterclaim cannot survive. *See Kasada, Inc. v. Access Capital, Inc.*, No. 01 Civ. 8893 (GBD), 2004 WL 2903776, at *20 (S.D.N.Y. Dec. 14, 2004).

Accordingly, HRCI respectfully requests that it be granted leave to file a motion to dismiss all of the Hard Rock Defendants' counterclaims. In their November 12th letter, Defendants suggest that the Court should defer setting a briefing schedule on their motion until the preliminary conference with the Court scheduled for December 17th, but HRCI submits that the Court should not wait a month to set a briefing schedule when both parties are now ready to brief their respective motions. This case was commenced in September, and if a briefing schedule is not set until December 17th, and taking into account the upcoming holiday season, the parties' motions will likely not be submitted until early February 2011.

Thus, HRCI requests that the Court set a briefing schedule now that provides for the service of opening briefs on December 9th, opposition briefs on December 23rd and reply briefs on January 6th. Alternatively, if the Court wishes to discuss the respective motions at an in-person conference before setting a briefing schedule, we ask that the Court consider rescheduling the upcoming conference for December 3 or 10, or any other date convenient for the Court. The Court should be aware that it is likely HRCI will amend its Complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B), but in light of the briefing schedule requested above, we will file that amended pleading sooner than the Rule requires, early next week.

Respectfully Submitted,

Bruce R. Ewing

Cc:    All Counsel of Record (via electronic mail)