DORSEY & WHITNEY LLP
Bruce R. Ewing (BE-0724)
Christopher Karagheuzoff (CK-1122)
Gina Spiegelman (GS-0416)
51 West 52nd Street
New York, New York 10019
(212) 415-9200

Attorneys for Plaintiff
Hard Rock Cafe International (USA), Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| HARD ROCK CAFE INTERNATIONAL (USA), INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10 CV 7244 (WHP) |
| | ) | |
| HARD ROCK HOTEL HOLDINGS, LLC, HARD ROCK HOTEL, INC., HRHH IP, LLC, MORGANS HOTEL GROUP CO., MORGANS HOTEL GROUP MANAGEMENT, LLC, MORGANS GROUP LLC, DLJMB HRH VOTECO, LLC, DLJ MB IV HRH, LLC, DLJ MERCHANT BANKING PARTNERS IV, L.P., TURNER BROADCASTING SYSTEM, INC., BRAD LACHMAN PRODUCTIONS, INC. and GENCO ENTERTAINMENT, INC., | ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO AMEND ITS FIRST AMENDED COMPLAINT

**DORSEY & WHITNEY LLP**
**51 West 52nd Street**
**New York, NY 10019**
**(212) 415-9200 (Phone)**
**(212) 953-7201 (Fax)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................1

RELEVANT FACTUAL BACKGROUND ..............................................................2

ARGUMENT .............................................................................................................7

    I.   LEGAL STANDARD ....................................................................................7

    II.  LEAVE TO AMEND SHOULD BE GRANTED BECAUSE
       NO JUSTIFICATION FOR DENYING LEAVE EXISTS ............................8

        A.    There Has Been No Undue Delay, Bad Faith or Repeated
               Failures to Cure Deficiencies in Previous Amendments ........................8

        B.    The Defendants Will Not Suffer Any Prejudice if the
               Amendment is Allowed ..........................................................................9

        C.    HRCI's Amendments Would Not be Futile ..........................................10

CONCLUSION ........................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009)...................................................................................................10

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007)...................................................................................................10

*Block v. First Blood Assocs.,*
 988 F.2d 344 (2d Cir. 1993)........................................................................................9

*Burns v. Martinez,*
 No. 08 Civ. 4835(LAK)(JCF), 2008 WL 5429644 (S.D.N.Y. Dec. 24, 2008)........................9

*Evans v. Syracuse City Sch. Dist.,*
 704 F.2d 44 (2d Cir. 1983)..........................................................................................8

*Fendi Adele S.R.L. v. Filene's Basement, Inc.,*
 696 F. Supp. 2d 368 (S.D.N.Y. 2010)........................................................................12

*Foman v. Davis,*
 371 U.S. 178 (1962).............................................................................................7, 8

*Hard Rock Cafe Int'l (USA), Inc. v. Hard Rock Hotel Holdings, LLC,*
 808 F. Supp. 2d 552 (S.D.N.Y. 2011)..............................................................6, 12, 13

*It's a 10, Inc. v. PH Beauty Labs, Inc.,*
 718 F. Supp. 2d 332 (S.D.N.Y. 2010)........................................................................10

*Kreinik v.. Showbran Photo, Inc.,*
 02CV1172, 2003 WL 22339268 (S.D.N.Y. Oct. 14, 2003) ..................................................10

*Monahan v. New York City Dept. of Corrections,*
 214 F.3d 275 (2d Cir. 2000).......................................................................................10

*Peterson v. Insurance Co.,*
 40 F.3d 26 (2d Cir. 1994)...........................................................................................7

*PI, Inc. v. Quality Prods., Inc.,*
 907 F. Supp. 752 (S.D.N.Y. 1995) ..............................................................................8

*Pirone v. MacMillan, Inc.,*
 894 F.2d 579 (2d Cir. 1990)......................................................................................14

*Pits, Ltd. v. Am. Express Bank Intern.*,
  911 F. Supp. 710 (S.D.N.Y. 1996) ..............................................................11

*Rachman Bag Co. v. Liberty Mutual Ins. Co.*,
  46 F.3d 230 (2d Cir. 1994)..........................................................................8

*Sally Gee, Inc. v. Myra Hogan, Inc.*,
  699 F.2d 621 (2d Cir. 1983).......................................................................15

*Savin Corp. v. Savin Group*,
  391 F.3d 439 (2d Cir.2004).........................................................................15

*The Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*,
  404 F.3d 566 (2d Cir. 2005).......................................................................10

STATUTES

15 U.S.C. § 1114.................................................................................................14

15 U.S.C. § 1125(a)...........................................................................................14

## PRELIMINARY STATEMENT

This is an action previously brought by plaintiff Hard Rock Cafe International (USA), Inc. ("HRCI") for breach of a June 1996 Trademark License and Cooperation Agreement (the "License Agreement") and asserting various trademark claims involving HRCI's famous HARD ROCK trademarks against the present and former owners and operators of the Las Vegas Hard Rock Hotel & Casino and those in privity with them.  The Court will recall that HRCI and the current owners and operators of the Las Vegas Hard Rock Hotel & Casino have been engaged in extensive settlement negotiations over the past eighteen months, during which time the filing of this motion to amend has been deferred pursuant to a series of amended scheduling orders, the most recent of which was dated November 19, 2012.  [Dkt. No. 75.]

With those negotiations having failed, HRCI has now, in compliance with the most recent scheduling order, filed this motion to amend its First Amended Complaint [Dkt. No. 27] and to serve and file its proposed Second Amended Complaint (the "Proposed Complaint"), a copy of which is attached as Exhibit 1 to the accompanying Declaration of Bruce R. Ewing.  For the Court's convenience, a redlined copy of the Proposed Complaint showing the changes made by HRCI to the First Amended Complaint is attached to the Ewing Declaration as Exhibit 2.  As the comparison demonstrates, the primary changes that are at issue on this motion are: (1) HRCI's deletion of certain defendants and other changes made as a consequence of the Court's Memorandum and Order dated July 11, 2011 [Dkt. No. 61]; (2) the addition of new defendants that assumed ownership and control of the Las Vegas Hard Rock Hotel & Casino effective March 2011 who have perpetuated the various breaches of contract and violations of HRCI's trademark rights upon which this action was originally brought; (3) a correction of the identities of the defendants who created and distributed, and are still distributing, the television show

"Rehab:  Party at the Hard Rock Hotel," that was at issue in HRCI's First Amended Complaint; and (iv) the addition of a new set of claims premised on illegal activity taking place at the Las Vegas Hard Rock Hotel & Casino, including the selling of illegal drugs and prostitution, that came to light in late 2010.

Prior to filing this motion, HRCI provided defendants' counsel with a copy of the Proposed Complaint in an effort to secure their consent to this amendment and obviate the need for the filing of this motion.  Ewing Declaration, ¶ 4.  None of the defendants would agree to such a stipulation.  Because, under the liberal standards governing motions to amend filed under Fed. R. Civ. P. 15(a), the proposed amendment is being filed in compliance with the Court's scheduling orders, will not prejudice the defendants, and states, with a few exceptions, the same valid claims for breach of contract and trademark violations that were first pleaded by HRCI when this action was commenced, and as to which dismissal was never sought by any defendant, the Court should grant the proposed motion.

## RELEVANT FACTUAL BACKGROUND

On November 23, 2010, HRCI filed its First Amended Complaint (the "Amended Complaint") [Dkt. No. 27], asserting claims for multiple breaches of contract against defendants HRHH IP, LLC ("HR IP") and Hard Rock Hotel Holdings, LLC ("HR Holdings"), and claims for trademark dilution, trademark infringement and unfair competition under federal and New York State law against all defendants, which included, in addition to HR IP and HR Holdings: Hard Rock Hotel, Inc. ("HR Inc."), Morgans Hotel Group Co. ("Morgans Hotel"), Morgans Hotel Group Management, LLC ("Morgans Management"), Morgans Group LLC ("Morgans Group"), DLJMB HRH Voteco, LLC ("DLJMB"), DLJ MB IV HRH, LLC ("DLJ MB IV"), DLJ Merchant Banking Partners IV, L.P. ("DLJ Merchant"), Turner Broadcasting System, Inc.

("Turner"), Brad Lachman Productions, Inc. ("Lachman") and Genco Entertainment, Inc.

("Genco") (collectively the "Defendants").  On December 7, 2010, most of the Defendants

submitted answers to the First Amended Complaint [Dkt. Nos. 33-35], with HR IP, HR Holdings

and HR Inc. (collectively the "Hard Rock Defendants") also asserting counterclaims against

HRCI for multiple breaches of contract, breach of the covenant of good faith and fair dealing,

and tortious interference with business relations.  [Dkt. No. 35.]

 Shortly thereafter, all of the parties except for Turner, Lachman and Genco filed motions

to dismiss.  [Dkt. Nos. 36, 38.]  With the exception of the Hard Rock Defendants, every moving

party sought to dismiss all claims and counterclaims asserted against them.  *Id.*  The Hard Rock

Defendants, however, only moved to dismiss one of HRCI's claims for breach of contract, and

also: (1) sought to compel arbitration of certain claims that allegedly concerned the quality of the

television program "Rehab: Party at the Hard Rock Hotel," and of the Hard Rock Hotel &

Casino properties located in Tulsa, Oklahoma and Albuquerque, New Mexico (the "Quality

Claims"), and (2) moved to stay the remainder of the proceedings before this Court pending the

outcome of the arbitration.  [Dkt. No. 38.]  Other than the Quality Claims, the Hard Rock

Defendants did not seek dismissal of the trademark infringement, trademark dilution, or unfair

competition claims asserted against them, nor, with one exception, the bulk of the claims for

breach of the License Agreement asserted against HR IP and HR Holdings.  *See id.*

 Around December 29, 2010, less than two weeks after the motions to dismiss were filed,

HRCI learned that the Nevada State Gaming Control Board (the "Board") had initiated an

enforcement action against HR Holdings.  *See* Proposed Compl., ¶ 51.  According to the

Complaint filed in that proceeding (a copy of which is attached as Exhibit 4 to the Proposed

Complaint), a two-year undercover investigation by the Board revealed that several employees of

the Las Vegas Hard Rock Hotel & Casino had been directly involved in selling illegal drugs (cocaine, ecstasy and marijuana), and facilitating acts of prostitution on the premises on multiple occasions – the most recent instances of which occurred as late as August 2010. *See id.*, ¶¶ 51-52. The Board also alleged that these illegal activities took place after HR Holdings was put on notice by the Board that such activities were occurring. *Id.*, ¶ 53. Although the subsidiary of HR Holdings that held the subject gaming license for the Las Vegas property neither admitted nor denied the factual allegations in the Board's Complaint, it did agree in a Stipulation dated December 29, 2010 and presented to the Nevada Gaming Commission (a copy of which is attached as Exhibit 5 to the Proposed Complaint) that is binding on HR Holdings – and that was signed by the President and CEO of HR Holdings – that the allegations could be proved at a hearing. *Id.* HR Holdings further agreed to pay $650,000 in fines and reimbursements to settle the matter. *Id.* Soon after learning of these facts and conducting its own investigation, HRCI wrote to the Court on February 18, 2011, requesting a pre-motion conference in advance of filing a motion for leave to amend the Amended Complaint to add allegations regarding the enforcement action.

In March 2011, prior to the pre-motion conference and while the above motions to dismiss were still pending, ownership and control of the Las Vegas Hard Rock Hotel & Casino – which does business under the trademarks subject to the License Agreement – passed from HR Holdings and HR, Inc. to HRHH Hotel/Casino, LLC ("HR Hotel") and BREF HR, LLC ("BREF"). Proposed Compl., ¶¶ 44-45. Since March 2011, HR Hotel has owned and/or controlled the casino portions of the complex comprising the Las Vegas Hard Rock Hotel & Casino that was formerly owned and/or controlled by HR, Inc. and HR Holdings. *Id.*, ¶ 9. BREF holds an equity interest in HR Hotel and/or the Las Vegas Hard Rock Hotel & Casino, and

has succeeded, with HR Hotel, to the interests formerly held by Defendants HR, Inc. and/or HR Holdings in such property, as of approximately March 2011. *Id.*, ¶ 10. Also at that time, WG-Harmon, LLC ("WG-Harmon") succeeded defendant Morgans Management as the exclusive operator and manager of the Las Vegas Hard Rock Hotel & Casino, providing management and other services to the hotel and casino that were formerly provided by Morgans Management. *Id.*, ¶¶ 11, 46.

As a consequence of this change in ownership, HRCI and the new owners of the Las Vegas Hard Rock Hotel & Casino agreed to resume settlement discussions, and accordingly filed a Stipulation & Order entered by this Court on May 2, 2011, extending, *inter alia*, the discovery deadlines, to allow time for the renewed settlement discussions (the "Stipulation"). [Dkt. No. 55, ¶ 1.] Also, in recognition of the fact that the changes in ownership, the pending decision on the parties' motions to dismiss, and the newly-discovered information regarding the Board's enforcement action would require HRCI to amend the Amended Complaint if the parties could not reach a settlement, the Stipulation granted HRCI leave to file a motion to amend, and included provisions whereby the parties could stipulate to such amendment to moot the necessity of a formal motion. *See id.*, ¶¶ 2-3. The Stipulation was amended on June 14, 2012 to further extend the deadlines to allow for further settlement discussions. [Dkt. No. 58.]

While settlement discussions were ongoing, this Court resolved the motions to dismiss in a Memorandum & Order dated July 11, 2011 (the "July 11 Order") [Dkt. No. 61], by: (1) dismissing all claims against defendants DLJMB, DLJ MB IV, DLJ Merchant, Morgans Hotel, and Morgans Group; (2) dismissing one of the Hard Rock Defendants' counterclaims for breach of contract and their claim for tortious interference with business relations; (3) denying the Hard Rock Defendants' motion to dismiss one of the breach of contract claims; (4) denying

Morgans Management's motion to dismiss; (5) denying HRCI's motion to dismiss the other breach of contract counterclaims and the counterclaim for breach of the implied covenant of good faith and fair dealing; (6) granting the motion to compel arbitration of the Quality Claims; and (7) denying the motion to stay.  *Id.*, *Hard Rock Cafe Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC*, 808 F. Supp. 2d 552, 556 (S.D.N.Y. 2011).

Over the course of the next eighteen months, the parties engaged in settlement discussions, including multiple mediation sessions supervised by Judge Robert W. Sweet and Professor Francis McGovern.  To allow sufficient time for these efforts, the litigation deadlines were subsequently extended by multiple amendments to the Stipulation, with the final amendment being entered on November 19, 2012.  [Dkt. No. 75.]  Per that final amendment, HRCI was given until February 8, 2013 to file a motion to amend the Amended Complaint, and the parties were to begin exchanging their document productions on that same day.  *Id.*  On February 1, 2013, HRCI sent all opposing counsel a draft of the Proposed Complaint seeking their consent, but none of the Defendants gave it – thus obliging HRCI to file this motion.

The Proposed Complaint contains four categories of changes to the Amended Complaint. First, HRCI seeks to conform the Proposed Complaint to the July 11 Order by: (1) removing as defendants Morgans Hotel, Morgans Group, DLJMB, DLJ MB IV and DLJ Merchant, and (2) removing the Quality Claims.  Second, in light of the changes in ownership and control of the Las Vegas Hard Rock Hotel & Casino that occurred in March 2011, HRCI seeks to add HR Hotel, BREF and WG-Harmon (the "New Hard Rock Defendants") as defendants on all of its trademark claims due to their direct participation in the alleged wrongdoing described in the Proposed Complaint that continued after they assumed ownership and control of the Las Vegas

Hard Rock Hotel & Casino in March 2011.[1]  Third, as a result of new information learned in an exchange of confidential documents between HRCI and defendants Turner, Lachman and Genco, HRCI proposes to: (1) dismiss Lachman as a defendant; and (2) substitute Courtroom Television Network LLC d/b/a Courtroom Television ("Courtroom Television") as a defendant in place of Turner.  And fourth, HRCI seeks to include new allegations of wrongdoing arising out of the illegal activities allegedly discovered by the Board in connection with the enforcement action that came to light on December 29, 2010, and that were the subject of HRCI's original application requesting leave to amend.

## ARGUMENT

### I.  LEGAL STANDARD

Although a party must seek leave to amend a pleading after responsive pleadings have been served, such "leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a); *see also Peterson v. Insurance Co.*, 40 F.3d 26, 32 (2d Cir. 1994) (referring to the "ordinary rule" that leave to amend should be freely granted).  In fact, the Supreme Court has held that failure to grant leave without any justification is an abuse of discretion that is "inconsistent with the spirit of the Federal Rules."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The circumstances that justify a refusal to grant leave to amend are: (1) undue delay, (2) bad faith and dilatory motive, (3) a repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party, and (5) futility of the amendment.

---

[1] In addition to adding the New Hard Rock Defendants as defendants on all of HRCI's trademark claims, the Proposed Complaint also contains additional factual allegations describing HR Hotel's involvement in the registration of Internet domain names that contain variations of the HARD ROCK trademarks owned exclusively by HRCI – many of which are not authorized for use under the License Agreement – and identifying additional representative samples of such domain names, including a full list of such disputed domain names known to HRCI that are owned and registered by the New Hard Rock Defendants and the Hard Rock Defendants.  *See* Proposed Compl., ¶¶ 112-14, Exh. 11.

*See Foman*, 371 U.S. at 182.  Unless one of these justifications is present, leave to amend should be granted.  *See Rachman Bag Co. v. Liberty Mutual Ins. Co.*, 46 F.3d 230, 234-35 (2d Cir. 1994) (holding that absent a "declared reason" from *Foman*, courts should not deny leave to amend).

## II.   LEAVE TO AMEND SHOULD BE GRANTED BECAUSE NO JUSTIFICATION FOR DENYING LEAVE EXISTS

### A.   There Has Been No Undue Delay, Bad Faith or Repeated Failures to Cure Deficiencies in Previous Amendments

The first three justifications for denying leave to amend are not applicable here, and thus warrant very little discussion.  First, HRCI has not delayed in seeking leave to amend the Amended Complaint.  The parties have been engaged in settlement discussions, including mediation, for over eighteen months.  During this time, the parties and the Court have agreed through the Stipulation and the amendments thereto both to a deadline before which HRCI would not seek leave to amend, and a deadline by which HRCI would seek leave to amend.  That latter deadline is today, and through this motion, HRCI has timely sought such leave after first attempting to secure defendants' consent to the amendment.  Next, prior to seeking this relief, HRCI has only amended its complaint once.  Thus, by definition, it cannot be guilty of repeatedly failing to cure deficiencies in previous amendments.  Lastly, there is no evidence of bad faith or dilatory motive on the part of HRCI.  HRCI is not, for example, seeking to amend the Amended Complaint in anticipation of some adverse ruling, *see PI, Inc. v. Quality Prods., Inc.*, 907 F. Supp. 752, 764 (S.D.N.Y. 1995), nor has it withheld from Defendants the new facts upon which it relies in the Proposed Complaint, *see Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983).  Indeed, all of the defendants have known of HRCI's intentions concerning the Proposed Complaint for more than eighteen months.

Thus, the only conceivably plausible arguments that Defendants could proffer in opposition would involve either prejudice if the Court allowed the amendment, or that any such amendment would be futile.   However, as discussed below, any such arguments would fail.

**B.      The Defendants Will Not Suffer Any Prejudice if the Amendment Is Allowed**

The party opposing amendment under Rule 15(a) bears the burden of demonstrating that leave to amend would be prejudicial.  *Burns v. Martinez*, No. 08 Civ. 4835(LAK)(JCF), 2008 WL 5429644, at *2 (S.D.N.Y. Dec. 24, 2008) (internal quotations omitted).  In determining what constitutes "prejudice" in the context of a motion to amend, the Second Circuit considers "whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the [opposing parties] from bringing a timely action in another jurisdiction."  *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).  None of these factors is present here.

First, no significant additional discovery is required in connection with the proposed amendments, all of which, with the exception of the illegal activity forming the basis of the Board's enforcement action, concern the substitution of certain defendants and the dismissal of others.  Moreover, to the extent additional discovery is required, sufficient time remains in the parties' proposed schedule to allow for such discovery.  Indeed, document discovery is just beginning (with the parties making their first production of documents today), no depositions have been taken, and fact discovery is not proposed to be completed for two months.

In addition, allowing the filing of the Proposed Complaint will not significantly delay the resolution of the dispute.  None of the allegations in the Proposed Complaint can come as a surprise to either the remaining Defendants, or those new Defendants that are being added in the Proposed Complaint.  In fact, all of the new Defendants have been aware of their potential

involvement in this case since early 2011 when they began to engage in settlement discussions with HRCI as evidenced by, *inter alia*, the Stipulation and amendments thereto.  *See Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 284 (2d Cir. 2000) ("[W]e will be most hesitant to allow amendment where doing so unfairly surprises the non-movant.").  It simply defies logic for any of the new Defendants to now claim that they would be prejudiced after their counsel stipulated to multiple extensions of the discovery deadlines in order to provide the parties time to conduct the ultimately unsuccessful settlement discussions.

### C.    HRCI'S Amendments Would Not be Futile

As with prejudice, the party opposing the motion to amend bears the burden of establishing futility.  *It's a 10, Inc. v. PH Beauty Labs, Inc.*, 718 F. Supp. 2d 332, 339 (S.D.N.Y. 2010).  A proposed amendment is futile if it is apparent that it could not withstand a Rule 12(b)(6) motion to dismiss.  *See Kreinik v.. Showbran Photo, Inc.*, 02CV1172, 2003 WL 22339268, at *2 (S.D.N.Y. Oct. 14, 2003).  As such, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, a "court must accept the facts alleged by the party seeking to amend as true and construe them in the light most favorable to that party."  *The Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 604 (2d Cir. 2005).  Because HRCI's amendments are far from being futile, and in fact are necessary for it to obtain complete relief, the Court may not deny the motion on this ground.

The Proposed Complaint contains four categories of amendments.  The first category involves modifying the Proposed Complaint to conform to the July 11 Order by dismissing both the Quality Claims and all claims against defendants Morgans Hotel, Morgans Group, DLJMB,

DLJ MB IV and DLJ Merchant.  These changes do not invoke questions of futility (or, for that matter, any of the justifications for denying leave to amend), and thus do not present any disputed issues, at least so far as HRCI is aware.

Next, HRCI seeks, based on certain confidential information received from defendants Turner, Lachman and Genco, to dismiss Lachman and to substitute Courtroom Television as a defendant for Turner.  The substance of the allegations pertaining to Courtroom Television were not materially altered from the allegations against Turner in the Amended Complaint.  Moreover, Turner, who shares counsel with Courtroom Television, chose not to move to dismiss the claims asserted against it in the Amended Complaint.  It cannot now legitimately argue that asserting those same claims against Courtroom Television – who was identified as the proper defendant by Turner – somehow renders those claims deficient as a matter of law.

The Proposed Complaint also contains new allegations against HR IP for breach of the License Agreement arising out of the alleged illegal activity that formed the basis for the enforcement action brought by the Board.  It is axiomatic that, in order to properly plead a claim for breach of contract under New York law, a plaintiff must allege "the terms of the contract, each element of the alleged breach, and the resultant damage to the plaintiff."  *Pits, Ltd. v. Am. Express Bank Intern.*, 911 F. Supp. 710, 719 (S.D.N.Y. 1996).  HRCI has easily satisfied these requirements.

First, HRCI identifies the relevant provisions of the License Agreement breached by HR IP, including the duty to comply with all federal, state and local laws and regulations.  *See* Proposed Compl., ¶¶ 56-58.  Next, HRCI describes the manner in which HR IP breached each of those provisions by authorizing and approving the use of HRCI's licensed HARD ROCK trademarks by HR Holdings and its subsidiary that were the subject of the Board's enforcement

actions in a manner outside the scope – and thus violative of – the License Agreement by associating the HARD ROCK trademarks with illegal activities.  *See id.*  Lastly, HRCI details the damage it incurred in the form of the loss of goodwill in, and dilution of, the HARD ROCK HOTEL and HARD ROCK CASINO trademarks caused by HR IP's breaches.  *See id.*  These allegations far exceed the minimum level of detail required to properly plead a claim for breach of contract.  As a result, it would not be futile to allow HRCI to amend the Amended Complaint to add this additional breach of contract claim.

The fourth category of amendments contained in the Proposed Complaint consists of adding the New Hard Rock Defendants and asserting claims against them for trademark infringement, trademark dilution and unfair competition under both the Lanham Act and New York State law.  Beginning in March 2011, these three parties succeeded current defendants in the ownership, control and/or management of the Las Vegas Hard Rock Hotel & Casino.  *See* Proposed Compl. ¶¶ 9-11, 44-46.  As such, they actively participated in and/or oversaw the same infringing activity after March 2011 that formed the basis for some of HRCI's trademark claims against HR Holdings, HR Inc. and Morgans Management contained in the Amended Complaint.

As this Court held in the July 11 Order, "because unfair competition, trademark infringement, and trademark dilution are tortious acts, every entity 'actively participating in, lending aid to, or ratifying and adopting such acts is liable' as a joint tortfeasor."  *Hard Rock*, 808 F. Supp. 2d at 560 (*quoting Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368, 385 (S.D.N.Y. 2010)).  Because the Proposed Complaint alleges that these various torts were committed by the New Hard Rock Defendants, in their roles as successors to, and in the same manner as, HR Holdings, HR, Inc. and Morgans Management, the allegations of trademark

infringement, trademark dilution and unfair competition are equally sufficient as against the New Hard Rock Defendants for their post-March 2011 conduct.

The claims against the New Hard Rock Defendants differ from those alleged against many of the Equity Defendants that were dismissed pursuant to the July 11 Order.[2]  *See Hard Rock*, 808 F. Supp. 2d at 561.  For those defendants, the Court determined that HRCI failed to allege facts sufficient to support an inference that they actually participated in any wrongdoing or "were in an actual or apparent partnership with the Hard Rock Defendants."  *Id.*  Here, the allegations against the New Hard Rock Defendants for their post-March 2011 conduct are the same as the allegations against the Hard Rock Defendants and Morgans Management for their pre-March 2011 conduct.  It follows that if the allegations against the Hard Rock Defendants and Morgans Management are sufficient, which – as evidenced by the fact that the Hard Rock Defendants did not even seek dismissal of the relevant tort claims and Morgans Management's motion to dismiss the relevant tort claims was denied – they undoubtedly are, those same allegations against the New Hard Rock Defendants must also be sufficient.  As a result, no claim of futility can succeed.

Even if, upon deciding the motions to dismiss, the Court had the opportunity to address the legal sufficiency of the relevant tort claims (*i.e.*, those trademark and unfair competition claims that were asserted against the Hard Rock Defendants that are also asserted against the New Hard Rock Defendants in the Proposed Complaint), it would have validated those claims because they were properly pleaded.  As such, the tort claims asserted against the New Hard Rock Defendants are also properly pleaded.

---

[2] In the July 11 Order, the Court referred to defendants Morgans Hotel, Morgans Management, Morgans Group, DLJMB, DLJ MB IV, and DLJ Merchant as the "Equity Defendants."  All claims against all of the Equity Defendants were dismissed in the July 11 Order, with the exception of those alleged against Morgans Management.

To begin with, a plaintiff asserting claims for federal trademark infringement and unfair competition under the U.S. Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.* (the "Lanham Act") or New York law must demonstrate that: (1) it has a valid trademark entitled to protection, and (2) the defendant's use of a similar mark is likely to cause confusion among consumers as to the origin of the goods or services. 15 U.S.C. §§ 1114, 1125(a); *see also Pirone v. MacMillan, Inc.*, 894 F.2d 579, 589 (2d Cir. 1990) (listing the nearly identical requirements to state a claim for common law trademark infringement in New York).  The Proposed Complaint easily meets these standards with respect to the New Hard Rock Defendants.  First, there is no question that HRCI has sufficiently alleged that it has a valid trademark entitled to protection.  *See* Proposed Compl., ¶ 25.  Second, the Proposed Complaint contains multiple allegations regarding the New Hard Rock Defendants' post-March 2011 infringing actions with respect to the use of the acronym HRH, and the unauthorized use of the HARD ROCK, HARD ROCK HOTEL, HARD ROCK CASINO, and SAVE THE PLANET trademarks.  *See id.*, ¶¶ 77-82, 92-93, 106-07. Third, the Proposed Complaint also alleges that these actions will cause consumers in both New York and the United States as a whole to be confused (or that they are likely to be confused) about whether HRCI has sponsored or authorized these actions.  *See id.*, ¶¶ 89, 101, 109.

Along similar lines, the Proposed Complaint also alleges that the same infringing actions will dilute the goodwill and distinctive quality inherent in HRCI's famous and distinctive HARD ROCK trademarks in both New York and the U.S. as a whole, and the distinctive quality of HRCI's SAVE THE PLANET trademark in the U.S.  *See id.*, ¶¶ 90, 102, 110.  These allegations, when combined with: (1) the allegations concerning the New Hard Rock Defendant's unauthorized commercial use of the HARD ROCK and SAVE THE PLANET trademarks, *see id.* ¶¶ 77-82, 92-93, 106-07, and (2) the allegations regarding the fame of the

-14-

HARD ROCK trademarks and the distinctiveness of the SAVE THE PLANET trademark, *see id.* ¶¶ 24, 104, are more than sufficient to state a claim for trademark dilution under both the Lanham Act and the New York Anti-Dilution Statute.  *See Savin Corp. v. Savin Group*, 391 F.3d 439, 449 (2d Cir.2004) (to state a claim for dilution under the Lanham Act, a trademark owner must allege that "(1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services."); *see also Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621, 625 (2d Cir. 1983) (in order to establish a dilution claim under New York law, two elements must be shown: (1) ownership of a distinctive mark, and (2) a likelihood of dilution).  Consequently, these claims are not futile, and the motion to amend should be granted with respect to the dilution claims.

    In sum, none of the justifications for denying leave to file an amended complaint exist in this case.  Most importantly, the Defendants will suffer no prejudice, and none of the proposed amendments would be futile.  As a result, the Court should exercise its discretion to grant HRCI leave to file the Proposed Complaint.

## <u>CONCLUSION</u>

For the foregoing reasons, plaintiff Hard Rock Cafe International (USA), Inc. respectfully requests that this Court grant its motion for leave to file the Second Amended Complaint.


Dated: New York, New York
       February 8, 2013                          Respectfully Submitted,


                                                 DORSEY & WHITNEY LLP


                                     By ____/s Bruce R. Ewing_____
                                         Bruce R. Ewing (BE-0724)
                                         Christopher Karagheuzoff (CK-1122)
                                         Gina Spiegelman (GS-0416)
                                         51 West 52nd Street
                                         New York, NY 10019
                                         (212) 415-9200

                                         Attorneys for Plaintiff
                                         Hard Rock Cafe International (USA),
                                         Inc.

 CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of February 2013, I caused a true and correct copy of the foregoing NOTICE OF MOTION, MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO AMEND ITS FIRST AMENDED COMPLAINT and DECLARATION OF BRUCE R. EWING to be filed with the Clerk of the Court via ECF, and to be served via ECF upon the following:

> Jeremy Feigelson, Esq.
> DEBEVOISE & PLIMPTON LLP
> 919 Third Avenue
> New York, NY 10022
>
> *Attorneys for Defendants Hard Rock Hotel Holdings, LLC, Hard Rock Hotel, Inc., HRHH IP, LLC, Morgans Hotel Group Co., Morgans Hotel Group Management, LLC, Morgans Group, LLC, DLJMB HRH VoteCo, LLC, DLJ MB IV HRH, LLC, DLJ Merchant Banking Partners IV, L.P.*
>
> James F. Rittinger
> James Regan
> 230 Park Avenue
> Suite 1190
> New York, New York 10169
> (212) 818-9200
>
> *Attorneys for the Defendants Turner Broadcasting System, Inc., Brad Lachman Productions, Inc. and Genco Entertainment, Inc.*

By: _____ s/ Bruce R. Ewing _____
                Bruce R. Ewing