DORSEY & WHITNEY LLP
Bruce R. Ewing (BE-0724)
Christopher Karagheuzoff (CK-1122)
Gina Spiegelman (GS-0416)
51 West 52nd Street
New York, New York 10019
(212) 415-9200

Attorneys for Plaintiff
Hard Rock Cafe International (USA), Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| HARD ROCK CAFE INTERNATIONAL (USA), INC., | ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | |
| v. | ) ) | Case No. 10 CV 7244 (WHP) |
| HARD ROCK HOTEL HOLDINGS, LLC, HARD ROCK HOTEL, INC., HRHH IP, LLC, MORGANS HOTEL GROUP CO., MORGANS HOTEL GROUP MANAGEMENT, LLC, MORGANS GROUP LLC, DLJMB HRH VOTECO, LLC, DLJ MB IV HRH, LLC, DLJ MERCHANT BANKING PARTNERS IV, L.P., TURNER BROADCASTING SYSTEM, INC., BRAD LACHMAN PRODUCTIONS, INC. and GENCO ENTERTAINMENT, INC., | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO AMEND ITS FIRST AMENDED COMPLAINT

DORSEY & WHITNEY LLP
51 West 52nd Street
New York, NY 10019
(212) 415-9200 (Phone)
(212) 953-7201 (Fax)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ............................................................................................................................2

    I.      THE COMPLAINT MAY BE AMENDED TO ADD NEW
           ALLEGATIONS CONCERNING ILLEGAL ACTIVITIES
           DISCOVERED BY THE NGCB.......................................................................2

           A.     The Legal Claims Premised Upon the Conduct Outlined in the
                   Settlement with the Board Do Not Fail the "Test of Plausibility"..............3

           B.     HRCI States A Claim For Trademark Dilution ...........................................5

           C.     HRCI Also States Other Trademark and Breach-of-Contract
                   Claims .......................................................................................................6

    II.     HRCI DOES NOT ASSERT QUALITY CLAIMS IN CONNECTION
           WITH REHAB..................................................................................................7

    III.    HRCI'S CLAIMS CONCERNING HRH ARE VIABLE .....................................8

    IV.   THE ALLEGATIONS CONCERNING THE TERMINATION OF THE
           ALBUQUERQUE SUB-LICENSE ARE ACTIONABLE .................................9

CONCLUSION.......................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

CASES

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................3

*Coca-Cola Co. v. Gemini Rising, Inc.,*
    346 F. Supp. 1183 (E.D.N.Y. 1972) .......................................................6

*E.G.L. Gem Lab Ltd. v. Gem Quality Institute, Inc.,*
    90 F. Supp.2d 277 (S.D.N.Y. 2000)....................................................8, 9

*George v. Grace Church,*
    No. 10 CV 5343 (VB), 2012 WL 859703 (S.D.N.Y. Feb. 17, 2012) ........10

*Hard Rock Cafe Int'l (USA), Inc. v. Hard Rock Hotel Holdings, LLC,*
    808 F.Supp.2d 552 (S.D.N.Y. 2011)......................................................7

*Hormel Foods Corp. v. Jim Henson Prods., Inc.,*
    73 F.3d 497 (2d Cir. 1996)....................................................................6

*Schonberger v. Serchuck,*
    742 F. Supp. 108 (S.D.N.Y. 1990) .......................................................9

*Tiffany (NJ), Inc. v. eBay, Inc.,*
    600 F.3d 93 (2d Cir. 2010)..................................................................10

*Twentieth Century Fox Film Corp. v. Marvel Enterprises,*
    155 F.Supp.2d 1 (S.D.N.Y. 2001) .........................................................9

*Ty, Inc. v. Perryman,*
    306 F.3d 509 (7th Cir. 2002) .................................................................6

## PRELIMINARY STATEMENT

Plaintiff Hard Rock Cafe International (USA), Inc. ("HRCI"), in compliance with the most recent scheduling order issued in this case, filed its motion to amend its First Amended Complaint and to serve and file its proposed Second Amended Complaint (the "Proposed Complaint").

In opposing the motion, the Hard Rock Defendants raise issues and advance arguments that range from the irrelevant (*e.g.*, the focus and status of settlement discussions, the conduct and subject matter of which were agreed to by all relevant parties), to those that are not cognizable in opposing leave to amend (*e.g.*, the alleged reasons offered by the Hard Rock Defendants for termination by the Pueblo of Isleta Tribe of their Albuquerque sublicense, or the so-called "best efforts" of the Hard Rock Defendants to remedy past misconduct at the Las Vegas Hard Rock Hotel & Casino (the "Hotel")), to the patently ridiculous (*e.g.*, because the Las Vegas Hard Rock Hotel & Casino "embraces the 'edgier' aspects of the 'rock and roll lifestyle,'" the HARD ROCK brand could not be damaged by well-documented and highly publicized illegal drug and prostitution activity that took place at that property and that continues to be discussed in the press).

It is unknown at this stage whether the Hard Rock Defendants will succeed in their attempt to spin the illegal drug and prostitution activities that occurred at the Hotel as the mere misdeeds of wayward employees – rather than the egregious conduct that led the Nevada State Gaming Control Board (the "NGCB" or the "Board") to impose substantial financial penalties.  But make no mistake, in imploring the Court to take note of their so-called "real world" explanations and to gut provisions of the License Agreement that require, *inter alia*, the Hard Rock Defendants to refrain from engaging in unlawful behavior and to protect the integrity of the licensed HARD ROCK trademarks, the Hard Rock Defendants ask the Court to hold that HRCI has no remedy in connection with this and other misconduct that, if it occurred, could do little **other** than damage HRCI's HARD ROCK brand.  In the context of an opposition to a motion for leave to amend,

which must be resolved under the same standard applicable to a motion to dismiss, there is no basis for any such holding. Thus, for the reasons previously stated and set forth below, the Court should grant HRCI's motion.

**ARGUMENT**

**I.      THE COMPLAINT MAY BE AMENDED TO ADD NEW ALLEGATIONS CONCERNING ILLEGAL ACTIVITIES DISCOVERED BY THE NGCB**

The Hard Rock Defendants offer a series of arguments, each weaker than the next, in opposing those aspects of the Proposed Complaint that concern allegations of wrongdoing arising out of illegal activities discovered by the Board, and that were committed at the Hotel by employees of the Hotel. In making these arguments, the Hard Rock Defendants impermissibly attempt to abdicate their responsibility for these illegal activities by placing the blame on rogue employees and affiliated entities, wholly ignoring both their roles as owner and operator of the Hotel, as well as HRCI's licensee, and the damage caused to HRCI's HARD ROCK brand.

As an initial matter, the Hard Rock Defendants' contention that any liability for the illegal activities occurring on their property can only be attributed to HRHH Gaming LLC ("HRHH Gaming"), the respondent in the Board's Complaint, is completely devoid of merit. First of all, this argument omits a crucial fact: the Board's Complaint was against HRHH Gaming *dba Hard Rock Hotel & Casino* – indicating that the subject of the Complaint was the Hotel, which is owned and operated by the Hard Rock Defendants. Moreover, the allegations contained in the Board's Complaint relate to activities at the Hotel undertaken by Hotel employees, Prop. Compl., Ex. 4, ¶¶ 11, 16, and the settlement was signed by the CEO of defendant HR Holdings and is made expressly applicable to HR Holdings, *id.*, Ex. 5, ¶ 8. It is disingenuous for the Hard Rock Defendants to conveniently overlook these facts, set up the straw man of "cousin liability," and

-2-

assert that HRCI should have to connect HRHH Gaming to the Hard Rock Defendants because HRHH Gaming was the real target of the Board.

HRCI did not name HRHH Gaming in the Proposed Complaint because it did not need to do so. As this Court has recognized, Lanham Act claims "are tortious acts" and "every entity actively participating in, lending aid to, or ratifying and adopting such acts is liable as a joint tortfeasor." July 11 Order at 8 [Dkt No. 61]. HRCI alleged that defendant HRH Holdings was responsible for these activities, Prop. Compl. ¶¶ 51-53, and that the various Hard Rock Defendants – as evidenced in their own public filings – exercise ownership and operational control over the Hotel. *Id.* ¶¶ 43-44. Nothing more is required of HRCI at this stage.

### A. The Legal Claims Premised Upon the Conduct Outlined in the Settlement with the Board Do Not Fail the "Test of Plausibility"

The Hard Rock Defendants argue that the claims premised upon the conduct outlined in the settlement agreement with the Board fail the "test of plausibility" articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In support of their argument, however, it is the Hard Rock Defendants who implausibly characterize the conduct at issue as a "dated, limited episode of employee misconduct involving drugs and prostitution" that could not have damaged the HARD ROCK brand. Opp. Br. at 9.

The conduct at issue was hardly the isolated instance of employee misconduct claimed by the Hard Rock Defendants, who acknowledge the Board's allegations that, in 2009 and 2010, several employees of the Hotel participated in the sale of drugs and acts of prostitution aimed at Hotel guests. Opp. Br. at 8-9. They also acknowledge that the Board alleged that management "knew, or should have known" about the illegal conduct and failed to take steps to prevent it from recurring. Opp. Br. at 9. HRHH Gaming also agreed, in a December 29, 2010 Stipulation that is binding on defendant HR Holdings; was executed by the President and CEO of HR Holdings; and

was presented to the Nevada Gaming Commission, that the allegations could be proved. Prop. Compl., ¶¶ 51-53. HR Holdings also agreed to pay $650,000 to settle the matter. *Id.*, ¶ 53.

Despite these alleged (and indisputable) facts, the Hard Rock Defendants offer a patently ridiculous assortment of reasons why such conduct, and the resulting settlement with the Board, cannot plausibly give rise to an inference of potential damage to the HARD ROCK brand. Those purported reasons include everything from Las Vegas being known as "Sin City," to prostitution being legal in other parts of Nevada, to the Hotel's use of so called "cheeky slogans" like "Get a Room," offering of an on-site lingerie boutique that delivers items directly to guests' rooms, and an embrace of the "edgier aspects of the rock and roll lifestyle." Opp. Brief. at 9. Of course, none of these excuses aimed at minimizing conduct that resulted in the imposition of a six-figure financial penalty suggests that the HARD ROCK brand was not damaged when the Hotel, over the course of 2009 and 2010, was converted into a crime scene.

Nor, as the Hard Rock Defendants claim, is the conduct at issue "dated" after the passage of two years (though even if it were, HRCI would still be well within its rights to sue). As this Court can take note, the negative publicity surrounding the conduct alleged by, and resulting in the settlement with, the Board, has been repeatedly referenced in media in the years since.[1] Such repetition means that, in fact, the events and their negative impact are not mere one-time occurrences; rather, the brand takes a hit for such conduct every time it is referenced in the media.

---

[1] *See, e.g.,* Hytrek, Nick, *Hard Rock didn't disclose fines to IRGC*, Sioux City Journal.com, January 11, 2013 (available at http://siouxcityjournal.com/news/local/a1/hard-rock-didn-t-disclose-fines-to-irgc/article_5b868784-58ff-5613-be79-3f775a0db026.html) (last visited March 13, 2013); Sieroty, Chris, *Regulators issue pool party warning*, Las Vegas Review-Journal, April 13, 2012, 2012 WLNR 963533; Velotta, Richard N., *$650,000 settlement with Hard Rock Hotel gets OK*, Las Vegas Sun, January 27, 2011 (available at http://www.lasvegassun.com/news/2011/jan/27/gaming-commission-oks-650000-settlement-hard-rock-/) (last visited on March 13, 2013).

**B.      HRCI States A Claim For Trademark Dilution**

Next, the Hard Rock Defendants argue that the conduct underlying the settlement with the

Board does not amount to dilution because the underlying conduct did not "involve[] any

trademark uses of the HARD ROCK Marks." In sum, the Hard Rock Defendants argue that

because: (i) prostitution services were not offered using nomenclature like "Hard Rock

Prostitutes"; (ii) the marijuana, cocaine, and ecstasy peddled to Hotel guests were not offered as

"Hard Rock Illegal Drugs"; and (iii) the Hard Rock Defendants are not alleged to have

"affirmatively [done] anything to associate the HARD ROCK Marks with the alleged illegal

activity," no claim for trademark dilution (in the form of tarnishment) can lie. Opp. Br. at 11-12.

Under this absurd characterization of trademark dilution, the Hard Rock Defendants would

be completely free to take any actions (or allow any actions to be taken) at the Hotel – regardless

of their illegality or the negative way in which they reflect on the HARD ROCK brand – without

risking liability, so long as they do not actually affix the HARD ROCK Marks to the goods or

services. For example, the Hard Rock Defendants could allow pornographic movies to be filmed

in the Hotel lobby and publicized, so long as those movies are not actually sold under HRCI's

trademarks. Clearly, the boundaries of dilution by tarnishment are not so restricted.

This argument is further undermined by the definition of the permitted uses specified in the

License Agreement. Under Section 1(l), Licensed Services, *i.e.*, those services that the Hard Rock

Defendants are granted permission to offer using HRCI's trademarks, are defined as "any and all

services provided by Licensee in connection with or relating to the operation of the Hard Rock

Hotel/Casinos or Hard Rock Casinos." A "Hotel" is defined as "a facility which is an all-inclusive

place for lodging, with indoor corridors and offering a variety of amenities." License Agreement

§ 1(d). The rendering of any services at the Hotel falling within these broad definitions is

necessarily a use of HRCI's licensed HARD ROCK trademarks. Here, the conduct underlying the

Board's complaint and the subsequent settlement all occurred "in connection with or relating to the operation" of the Hotel by employees of the Hotel. *See, e.g.*, Prop. Compl, Ex. 4, ¶ 11 ("all events and activities contained herein took place on the premises of the [Hotel] and in venues owned and managed by the [Hotel]"); *see also id.*, ¶ 16 (referring to conduct of past or current employees and/or agents of the Hotel). Plainly, then, a claim for dilution lies when HRCI's marks are associated with illegal activity perpetrated by employees of the Hard Rock Defendants on the premises of the Hotel itself.

Because the activities of Hotel employees occurring while they work at the Hotel are encompassed within the definition of Licensed Services offered under HRCI's licensed trademarks, the cases cited by the Hard Rock Defendants are irrelevant. In fact, in both *Ty, Inc. v. Perryman*, 306 F.3d 509, 511 (7th Cir. 2002), and *Coca-Cola Co. v. Gemini Rising, Inc.*, 346 F. Supp. 1183 (E.D.N.Y. 1972), the actions that were found to support claims of dilution by tarnishment (*i.e.*, the example offered by the court of a "striptease joint" using the name "Tiffany" in *Ty, Inc.*, and an "Enjoy Cocaine" advertisement in *Coca-Cola Co.*) create the same damaging associations as the illegal activity at issue here. *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 507 (2d Cir. 1996), fares no better, because the issue in that case was whether the defendant's use created the negative associations required for a tarnishment claim, rather than the positive associations the court found were being created. Here, the negative associations created by the association of HRCI's licensed trademarks with illegal activity cannot be credibly disputed.

**C.      HRCI Also States Other Trademark and Breach-of-Contract Claims**

Next, the Hard Rock Defendants assert that no claims can be premised on the failure by defendant HRHH IP ("HR IP") to comply with Sections 4(d), 6(a) and 6(b) of the License Agreement because these provisions are allegedly mere covenants, not provisions that govern the use of the licensed HARD ROCK marks.

Section 4(d) of the License Agreement requires HR IP to "comply in all respects with all federal, state and local laws and regulations in regarding said Licensed Products and Licensed Services." HR IP did not comply with this provision when it permitted prostitution and drug dealing to take place at the Hotel, where HRCI's licensed marks are used.  Section 6(a) requires HR IP to use its "best efforts" to protect HRCI's licensed trademarks "and the goodwill associated therewith."  Again, by permitting the drug dealing and acts of prostitution underlying the Board investigation and settlement, HR IP fell far short of using its "best efforts" to protect the goodwill of HRCI's HARD ROCK trademarks, and the Court has already ruled that assessing a party's compliance with a contractual best-efforts provision is rarely possible on a pre-discovery motion. *Hard Rock Cafe Int'l (USA), Inc. v. Hard Rock Hotel Holdings, LLC*, 808 F.Supp.2d 552, 562 (S.D.N.Y. 2011).  Finally, Section 6(b) forbids HR IP from "taking any action which would . . . damage or dilute . . . the Hard Rock Hotel Marks or Hard Rock Casino Marks."  Again, in at worst facilitating, and at best failing to prevent, the acts of prostitution and drug dealing described by the Board, the Hard Rock Defendants damaged and diluted HRCI's trademarks, simple as that.

## II.   HRCI DOES NOT ASSERT QUALITY CLAIMS IN CONNECTION WITH REHAB

The Hard Rock Defendants next assert, incorrectly, that HRCI attempts an end-run around the Court's July 11 Order granting the Hard Rock Defendants' motion to compel arbitration with respect to the quality of the *Rehab* television show.  However, HRCI has not asserted a claim against the Hard Rock Defendants for any quality-related issue pertaining to the *Rehab* television show.  The only remaining claim against the Hard Rock Defendants associated with *Rehab* concerns liability associated with the use of the HARD ROCK Marks in the title of the show – an unauthorized use of those Marks that the Hard Rock Defendants impermissibly allowed.  That

-7-

remaining claim against the Hard Rock Defendants, as it pertains to *Rehab*, has zero to do with the appalling nature of that program and survives the July 11 Order.[2]

## III.    HRCI'S CLAIMS CONCERNING HRH ARE VIABLE

As set forth above, Section 6(b) of the License Agreement provides in pertinent part that "Licensee shall not . . . file any document requesting any governmental authority to take any action nor take any action itself which would affect the ownership of or damage, dilute, or modify the Hard Rock Hotel Marks or Hard Rock Casino Marks." The Hard Rock Defendants appear to argue that in opposing HRCI's attempted registration of HRH, they have not filed any document with a government authority, or otherwise taken any action, that would damage or dilute HRCI's licensed HARD ROCK trademarks. This simply is not so.

*E.G.L. Gem Lab Ltd. v. Gem Quality Institute, Inc.*, 90 F. Supp.2d 277 (S.D.N.Y. 2000), is instructive. There, a sublicensee essentially attempted to create its own sub-brand, and to use that sub-brand, denominated by the letters "GQI," in conjunction with the license it held to use the mark "EGL," with the ultimate aim being to "capture EGL goodwill for GQI while at the same time differentiating GQI" in a manner that would permit it to benefit from the EGL association, even after any potential expiration of its EGL license. *Id.* at 284. As the court noted, the defendant "plainly intended, that EGL-LA was a creature of GQI and, in consequence, that the EGL services and quality with which customers were familiar were products of the same management as those offered by GQI." *Id.* at 285. Because permitting such conduct by GQI would dilute the licensor's marks and lead to consumer confusion, the Court held that such use was impermissible. *Id.* at 296 (while the license gave defendant "the right to use the EGL name and

---

[2]   In addition, because the claims against the TV Defendants associated with *Rehab* are not subject to any arbitration agreement with HRCI, those claims were not dismissed in favor of arbitration and remain a part of the Proposed Complaint. The TV Defendants have not submitted any opposition to HRCI's motion for leave to amend.

marks," it did not grant right "to use them in conjunction with [its] own GQI mark in a manner that would confuse the relevant public as to the source of his products and services or the affiliation between GQI and EGL," or enable defendant "to reap for GQI the benefit of EGL's goodwill").

The Hard Rock Defendants have opposed HRCI's registration of the "HRH" trademark – a mark that they are not authorized to use – but that the Hard Rock Defendants nevertheless use to in effect "sub-brand" the Hotel.  In filing such opposition, the Hard Rock Defendants, in contravention of Section 6(b), have filed a document with a government authority, and taken action, the effect of which is to dilute the Hard Rock Hotel Marks and Hard Rock Casino Marks. Moreover, regardless of whether such conduct violates Section 6(b) of the License Agreement, it is separately actionable as infringement under trademark law.  *See E.G.L. Gem Lab Ltd.*, 90 F. Supp.2d at 292-98; *accord Twentieth Century Fox Film Corp. v. Marvel Enterprises*, 155 F.Supp.2d 1, 21 (S.D.N.Y. 2001) ("a licensee that wishes to create rights in a mark separate from the licensed mark has an affirmative obligation to choose a mark sufficiently different from the licensed mark to avoid confusion – the licensee trades upon the goodwill of the licensor at the licensee's peril") (quoting *Gem Lab*).  Claims premised on such conduct are therefore not susceptible to resolution at this stage.

## IV.    THE ALLEGATIONS CONCERNING THE TERMINATION OF THE ALBUQUERQUE SUB-LICENSE ARE ACTIONABLE

The Hard Rock Defendants argue that because the Pueblo of Isleta Tribe (the "Tribe") made an independent decision to terminate the Albuquerque sublicense agreement, such termination and the attendant media coverage of it cannot serve as any basis for liability.

The Hard Rock Defendants assert that the termination resulted from no wrongdoing on their part, but rather a decision by the Tribe to go in a different business direction.  That is an issue of fact not susceptible to resolution on this motion, *see, e.g., Schonberger v. Serchuck*, 742 F.

Supp. 108, 114 (S.D.N.Y. 1990), and, indeed, the Tribe has publicly complained about the lack of

support that it received from HR IP.  *See, e.g.*, Vigil, Joe Isleta *Pueblo Dumping Hard Rock name*,

KOB Eyewitness News, November, 2012 (available at http://www.kob.com/article/stories/

S2827148.shtml) (last visited on March 13, 2013) ("Pueblo officials said the owner of the

franchise did not live up to a contract agreement to provide marketing, management training and

services.").  HRCI is therefore entitled to assert, as it has, that the Tribe terminated because of that

lack of support, and that the attendant media coverage has tarnished the HARD ROCK brand.[3]

## CONCLUSION

For the foregoing reasons, HRCI respectfully requests that this Court grant its motion for

leave to file the Second Amended Complaint.

Dated: New York, New York
      March 15, 2013

Respectfully Submitted,

DORSEY & WHITNEY LLP

By     /s Bruce R. Ewing
    Bruce R. Ewing (BE-0724)
    Christopher Karagheuzoff (CK-1122)
    Gina Spiegelman (GS-0416)
    51 West 52nd Street
    New York, NY 10019
    (212) 415-9200

    Attorneys for Plaintiff
    Hard Rock Cafe International (USA), Inc.

---

[3]   *George v. Grace Church*, No. 10 CV 5343 (VB), 2012 WL 859703 (S.D.N.Y. Feb. 17, 2012) is inapposite.  There, the court dismissed the complaint of a *pro se* plaintiff alleging civil rights violations against one of the individual defendants on the ground that no allegations of personal involvement by such defendant had been made. *Tiffany (NJ), Inc. v. eBay, Inc.*, 600 F.3d 93, 112 (2d Cir. 2010), also bears no factual resemblance to this case, for it merely stands for the proposition that relief for trademark counterfeiting should have, in the context of that case, been sought from the parties actually selling the counterfeit goods.

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of March 2013, I caused a true and correct copy of the foregoing NOTICE OF MOTION, MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO AMEND ITS FIRST AMENDED COMPLAINT and DECLARATION OF BRUCE R. EWING to be filed with the Clerk of the Court via ECF, and to be served via ECF upon the following:

> Jeremy Feigelson, Esq.
> DEBEVOISE & PLIMPTON LLP
> 919 Third Avenue
> New York, NY 10022
>
> *Attorneys for Defendants Hard Rock Hotel Holdings, LLC, Hard Rock Hotel, Inc., HRHII IP, LLC, Morgans Hotel Group Co., Morgans Hotel Group Management, LLC, Morgans Group, LLC, DLJMB HRH VoteCo, LLC, DLJ MB IV HRH, LLC, DLJ Merchant Banking Partners IV, L.P.*
>
> James F. Rittinger
> James Regan
> 230 Park Avenue
> Suite 1190
> New York, New York 10169
> (212) 818-9200
>
> *Attorneys for the Defendants Turner Broadcasting System, Inc., Brad Lachman Productions, Inc. and Genco Entertainment, Inc.*

By:    s/ Bruce R. Ewing
        Bruce R. Ewing

-11-